UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

NIKO STEPHEN STEEL,

    Plaintiff,

vs.

MORSE OPERATIONS, INC. d/b/a
ED MORSE DELRAY TOYOTA,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, NIKO STEPHEN STEEL, by and through undersigned counsel, sues Defendant, MORSE OPERATIONS INC., d/b/a ED MORSE DELRAY TOYOTA, and alleges as follows:

**Preliminary Statement**

1. This action seeks declaratory, injunctive and equitable relief, equitable damages, compensatory damages, punitive damages, costs and attorney's fees for (1) discharging Steel or otherwise discriminating against Steel with respect to his compensation, terms, conditions, or privileges of employment, because of his disability, in violation of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA") and the Florida Civil Rights Act, Fla. Stat. § 760.01-760.11 ("FCRA"); and (2) discharging Steel or otherwise discriminating against Steel with respect to his compensation, terms, conditions, or privileges of employment, because of his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. ("ADEA") and the FCRA.

2. This action arises under Title I of the ADA, the ADEA, and the FCRA.

**Jurisdiction**

3. Jurisdiction is invoked under 28 U.S.C. §§ 1331. All administrative requirements have been exhausted and a Notice of Right to Sue was issued by the Equal Employment Opportunity Commission ("EEOC") on or about March 25, 2022, based upon a charge of discrimination timely and dually filed with the EEOC and Florida Commission on Human Relations ("FCHR") on or about March 14, 2022.

4. Steel reserves the right to move the Court for leave to amend this Complaint to add a claim arising under the FCRA, once the FCHR determines there is reasonable cause to believe a discriminatory practice has occurred in violation of the FCRA or in the event the FCHR fails to conciliate or determine whether there is reasonable cause on Plaintiff's charge of discrimination within 180 days of the filing of the Plaintiff's charge of discrimination, pursuant to § 760.11(4) or (8), Fla. Stat.

**Venue**

5. This action properly lies in the Southern District of Florida pursuant to 28 U.S.C. 1391(b) because the claims arose in this judicial district.

**Facts**

6. Steel is a citizen and resident of Palm Beach County, Florida, over the age of eighteen (18), within the Court's jurisdiction and otherwise *sui juris*.

7. Morse Operations, Inc. is a Florida Corporation authorized to do and doing business in the State of Florida.

8. Specifically, Morse Operations, Inc. does business as Ed Morse Delray Toyota, located at 2800 South Federal Highway, Delray Beach, Florida, 33483.

9. At all times material hereto, Ed Morse Delray Toyota was a covered employer, and

Steel was a covered employee, both under the ADEA and ADA.

10. At all times material hereto, Steel was a member of two (2) protected classes for purposes of the ADEA's and ADA's prohibitions against age and disability discrimination. Namely, Steel was 64 years of age at the time he was terminated and suffered from medical conditions known to the Defendant, including anxiety, depression, high blood pressure, post-traumatic stress disorder, and small fiber neuropathy.

11. Ed Morse Delray Toyota employed Steel on two (2) separate occasions, from November 2019 until July 2021.

12. Steel was employed as a Car Sales Representative.

13. Steel's supervisor was Jim Riger, the General Sales Manager.

14. In March 2020, while employed at Ed Morse Delray Toyota, Steel began experiencing medical issues related to stinging and burning pain in his legs. He was later diagnosed with small fiber neuropathy.

15. As part of his medical treatment for small fiber neuropathy, Steel was placed on a medication called amitriptyline. Because this medication causes extreme drowsiness, Steel received instructions from his physician to take the medicine no later than 8:00 p.m. As a result, Steel was additionally ordered by his doctor to leave work at 6:00 p.m.

16. Because Steel was leaving work at 6:00 p.m., he was subject to ridicule and harassment by his coworkers and supervisors. Among others, Riger stated that Steel's legitimate medical need was simply "an excuse to go home early."

17. Due to this harassment by his coworkers and supervisors, Steel inquired in November 2020 about switching medications to find one that would not make him drowsy. Steel's doctor switched his medication from amitriptyline to nortriptyline. Steel would not have requested

to switch medications had there been no harassment from his coworkers and superiors, specifically Riger.

18. On or about December 3, 2020, just days after switching medications, Steel was driving and experienced blurry vision. He stopped at Delray Medical Center where he lost consciousness. He was then hospitalized for five days with a Transient Ischemic Attack. Upon information and belief, the switch in medication was a significant factor in this medical episode.

19. During Steel's time in the hospital, significant arterial blockage was discovered requiring catheterization. Steel communicated with Ed Morse Delray Toyota regarding the need for a medical leave of absence due to this series of procedures. Steel met with the Human Resources Department and filled out paperwork regarding this planned leave.

20. Riger was present in the HR meeting described in paragraph 19 and continued his harassment of Steel. Riger insinuated to Steel that he could be terminated for lying on his job application about previous medical conditions. There is no section on the Ed Morse Delray Toyota job application regarding previous medical conditions.

21. Steel subsequently had three surgeries to correct his arterial blockage, on or about December 31, 2020, January 28, 2021, and February 28, 2021.

22. Steel's doctor recommended to insert a stent into Steel's leg to improve blood flow. Again, Steel communicated his needs with the HR Department. Riger did not approve of this absence, telling Steel directly, and with no compunction whatsoever, "You have a disability, you're old. Why don't you just retire and make this easy for all of us?"

23. On or about May 4, 2021, Steel had the stent put in his leg.

24. Steel continued to experience pain following his stent. Riger approached Steel and told him, on two separate occasions, to not go to HR regarding his planned absence and to take the

time he needs to recover. HR approved Steel's absence on or about June 15, 2021, but informed Steel that he would need to sign paperwork regarding the absence.

25. Contemporaneously with the events in paragraph 24, Riger fired Steel. Steel's desk and office were cleaned out and his belongings were packed in a box.

26. Steel scheduled a meeting with both HR and Riger. At this meeting, HR rescinded Steel's termination, telling Riger that there was to be no retaliation on his part, and for Steel to resume working on or about June 25, 2021.

27. Once Steel resumed working, he was placed into a different, smaller office than the one he held prior to his unlawful and ultimately rescinded termination.

28. Further, Steel noticed discrepancies in the sales that he had participated in which were not being credited, in whole or in part, to him. Steel emailed HR and Riger about these discrepancies, which were ultimately resolved on or about July 16, 2021, in Steel's favor.

29. During the week of July 17, 2021, Steel was sent home by both Ashley and Riger because he was apparently looking ill. Steel presented to Delray Medical Center, where he was placed on a stroke alert by the medical staff. Steel was out of work until July 23, 2021, for which he provided HR with the proper paperwork and doctor's notes. He was specifically instructed to return to work on or about July 26, 2021.

30. On or July 28, 2021, Steel was written up for allegedly "refusing to perform reasonable assigned tasks." Prior to this alleged violation, Steel had not been written up for any similar incident. Upon information and belief, other employees have been disciplined for failing to perform reasonable assigned tasks but have not been terminated after their first written discipline on the same.

31. Steel was also written up for allegedly making "over 100 personal phone calls" over

a two-week period, which apparently constituted a "theft of time" violation. Forty of those calls were less than 1 minute in duration. Prior to this alleged violation, Steel had not been written up for any similar incident. Upon information and belief, other employees have made frequent personal phone calls without being disciplined for theft of time, let alone terminated.

32.   As a result of these alleged infractions, on July 28, 2021, Ed Morse Delray Toyota skipped over any progressive disciplinary measures and terminated Steel, this time permanently.

33.   Upon information and belief, Steel was replaced with a substantially younger worker.

34.   At all times material hereto, Steel was qualified for his position and performed his position competently.

35.   Steel was terminated due to Riger's animus against his age and disabilities, specifically Steel's medical conditions documented within the company. He was terminated not as a result of progressive discipline or poor performance, but due to improper discriminatory and illegal reasons.

36.   As a result of his termination, Steel has suffered a tremendous economic loss. And, even with appropriate mitigation, which interim earnings certainly will reduce Steel's economic damages, he has not been able to successfully obtain an employment opportunity substantially equivalent to that which he has lost Ed Morse Delray Toyota by virtue of Riger's discrimination.

37.   As a result of his termination and the discrimination suffered in the workplace, Steel incurred significant personal expenses related to mental stress and anguish, including counseling and therapy, as well as significant medical bills related to his physical health.

38.   Due to the adverse employment actions that he faced due to discrimination because of their ages and disabilities, Steel has retained the legal services of the undersigned Counsel to

enforce his rights and is required to pay his attorney a reasonable fee for services rendered in this case.

## COUNT I - AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. §§ 621-634

39. Steel adopts and incorporates by reference the allegations in Paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. Under the ADEA, "it shall be unlawful for an employer – (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; [AND] (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623.

41. Ed Morse Delray Toyota is an "employer" as defined by the ADEA.

42. Steel was over the age of forty and qualified for his position with Ed Morse Delray Toyota when his employment was terminated.

43. Ed Morse Delray Toyota singled out Steel due to his age and terminated his employment under pretext.

44. Specifically, Riger, an employee of Ed Morse Delray Toyota and Steel's supervisor, singled out Steel, who is over the age of forty, expressing his discriminatory animus and cajoling Steel into retiring because he was old and had a disability.

45. Upon information and belief, Riger had significant input as to whether to terminate Steel. In fact, Riger unilaterally terminated Steel on or about June 15, 2021, until it was rescinded by HR.

46. Further still, Ed Morse Delray Toyota forewent any progressive discipline for

Steel's alleged infractions and immediately terminated his employment on or about July 28, 2021, despite Steel having never been written up for any similar infraction during his tenure.

47. Ed Morse Delray Toyota's unlawful employment practices complained of above, deprived Steel of his statutory rights under the ADEA.

48. Ed Morse Delray Toyota and its employees/agents discriminated against Steel with respect to his employment because of his age by subjecting Steel to unwarranted harassment, a subsequently rescinded termination, and pretextual discipline in order to terminate his employment.

49. Steel suffered damages because of Ed Morse Delray Toyota's unlawful discriminatory actions, including past and future lost wages and benefits and the costs of bringing this action.

50. What's more, Ed Morse Delray Toyota willfully violated Steel's rights under the ADEA and, as a result, is liable for liquidated damages.

51. Steel has retained the legal services of the undersigned Counsel to enforce his rights under the ADEA and is required to pay his attorney a reasonable fee for services rendered in this case.

WHEREFORE, Plaintiff, Niko Steel, prays that this Court:

A. Declare Ed Morse Delray Toyota's conduct to be in violation of Steel's civil rights under the ADEA;

B. Enjoin Ed Morse Delray Toyota from further engaging in such conduct;

C. Award Steel equitable damages in the form of back pay;

D. Award Steel the equitable remedy of reinstatement, or, in the alternative, award Steel front pay in lieu of reinstatement;

  E. Award Steel compensatory and punitive damages;

  F. Award Steel costs and reasonable attorney's fees; and

  G. Grant such other and further relief as may be deemed just and proper in the premises.

### COUNT II - DISABILITY DISCRIMINATION IN VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT

  52. Steel adopts and incorporates by reference the allegations in Paragraphs 1 through 38 of this complaint as if fully set forth herein.

  53. Title I of the ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630, prohibits covered employers, such as Ed Morse Delray Toyota, from discriminating against qualified individuals with disabilities in job application procedures, hiring, firing, advancement, compensation, job training, and other terms, conditions, and privileges of employment.

  54. Ed Morse Delray Toyota is, and at all material times was, engaged in commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year and is an "employer" as defined by 42 U.S.C. § 12111(5).

  55. At the time of his termination from employment with Ed Morse Delray Toyota, Steel was a qualified individual with a disability as contemplated by 42 U.S.C. § 12111(8). Specifically, Steel's impediments interfered with his ability to sleep, walk, sit for extended periods of time, concentrate, and think, among other major life activities.

  56. Ed Morse Delray Toyota perceived Steel as an individual with a disability, specifically Riger, who had substantively told Steel, in so many words, "You have a disability, you're old. Why don't you just retire and make this easy for all of us?"

  57. Importantly, Steel is otherwise a qualified individual with a disability who was able

to perform all of the functions of his position as Car Sales Representative. Steel was fully capable of handling reasonably necessary stress incurred in the workplace.

58. Ed Morse Delray Toyota was aware of Steel's need to seek medical treatment for his medical conditions. Steel provided all appropriate documentation for his medical procedures.

59. Ed Morse Delray Toyota took an adverse job action against Steel, including, but not limited to,

    a. Riger's unilateral termination of Steel on or about June 15, 2021, when Steel requested another leave of absence from HR so he could undergo further medical procedures, which was rescinded by HR approximately 10 days later; and

    b. Steel's permanent termination on or about July 28, 2021, without being subject to any sort of progressive discipline for offenses that others have not been terminated for.

60. Ed Morse Delray Toyota's conduct as described in this complaint constitutes discrimination on the basis of disability in violation of Title I of ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630.

61. As a result of Ed Morse Delray Toyota's actions, Steel has suffered mental anguish, loss of earnings, loss of ability to earn money and other monetary damages. The losses and expenses are permanent and continuing and Steel will suffer losses in the future.

62. Ed Morse Delray Toyota's actions caused, and continue to cause, irreparable harm through Steel's loss of gainful employment and through loss of valuable employment benefits including group health insurance, life insurance, disability insurance, all of which he would have received had he not been unlawfully terminated.

WHEREFORE, Plaintiff, Niko Steel, prays that this Court:

A. Declare Ed Morse Delray Toyota's conduct to be in violation of Steel's civil rights under Title I of the ADA;

B. Enjoin Ed Morse Delray Toyota from further engaging in such conduct;

C. Award Steel equitable damages in the form of back pay;

D. Award Steel the equitable remedy of reinstatement, or, in the alternative, award Steel front pay in lieu of reinstatement;

E. Award Steel compensatory and punitive damages;

F. Award Steel costs and reasonable attorney's fees; and

G. Grant such other and further relief as may be deemed just and proper in the premises.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated: July 15, 2022
Boca Raton, FL

Respectfully submitted,

**Alex B.C. Ershock**
ALEX B.C. ERSHOCK, ESQ.
Florida Bar No. 100220
E-Mail:  ABE@PBL-Law.com
PADULA BENNARDO LEVINE, LLP
3837 NW Boca Raton Blvd., Suite 200
Boca Raton, FL   33431
Telephone:   (561) 544-8900
Attorneys for Plaintiff